UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                          CASE NO. 10-20353
                                             HON. LAWRENCE P. ZATKOFF

v.

MITCHELL E. KARAM,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on March 2, 2011

**I. INTRODUCTION**

This matter is before the Court on Defendant Mitchell Karam's Motion to Dismiss Indictment (Docket #14). The Government has filed a response. The Court finds that the facts and legal arguments pertinent to Defendant's Motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(f)(2), it is hereby ORDERED that Defendant's Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motion is DENIED.

**II. BACKGROUND**

On June 10, 2010, the Government filed a one-count indictment against Defendant, wherein the Government alleged Defendant engaged in bank fraud, in violation of 18 U.S.C. § 1344. A final

plea hearing was set for August 12, 2010. At that hearing, the parties asked for additional time to engage in discovery and negotiations regarding the charge against Defendant. The Court granted a 45-day extension. During that time, the parties requested another adjournment of the final plea hearing, this time for 60 days. On September 15, 2010, a few days after the Court signed an order granting the 60-day extension, the Government filed a superseding indictment, wherein it added an additional six charges against Defendant, all of which allege that Defendant engaged in mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343.

On November 4, 2010, the parties submitted a stipulation that requested, and the Court signed an order that granted, another 45-day extension for the final plea hearing, this time until January 6, 2011. On December 22, 2010, the parties sought and were granted another adjournment of the final plea hearing, which was re-scheduled for February 15, 2011. On February 4, 2011, Defendant filed the motion presently before the Court. On February 15, 2011, the parties appeared before the Court for the final plea hearing. At that time, Defendant requested additional time to determine his course of action due to an onset of medical problems in late 2010. The Court therefore adjourned the final plea hearing to March 15, 2011. On February 23, 2011, the Government filed its response.

### III. LEGAL STANDARD

In reviewing a motion to dismiss an indictment, the Sixth Circuit has stated that "'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v.*

*Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Collis*, 128 F.3d 313, 317 (6th Cir.1997) (holding that an indictment was sufficient because "[t]he charged offense fully tracks the relevant language of" the statute). In deciding a motion to dismiss an indictment, "the Court must view the Indictment's factual allegations as true, and must determine only whether the Indictment is 'valid on its face.'" *United States v. Campbell*, 2006 WL 897436 (E.D. Mich. 2006) (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)). In deciding the motion, the district court must resolve any factual issues in favor of the indictment.

## IV. ANALYSIS

Defendant claims that the superseding indictment should be dismissed because it fails to articulate any scheme by Defendant to defraud Macomb Community Bank ("MCB"). The Court notes that Defendant's Motion appears to challenge only the alleged bank fraud charged in Count I, and specifically challenges only the "mandatory element of intent to defraud." In his Motion, Defendant states that:

> The indictment alleges that [Defendant] defrauded MCB by not paying off the agreed upon lot fee of $113,000.00. However, that was not his responsibility and was not mandated by the terms of the mortgage itself. . . .
>
> \* \* \* \* \*
>
> The indictment filed completely fails to allege any facts to establish the mandatory element of intent to defraud. As written, the indictment violates Fed.R.Crim.P. 7(c)(1).

For the reasons set forth below, the Court is not persuaded that the superseding indictment should be dismissed.

A.     **The Elements of Bank Fraud**

The Bank Fraud Act provides as follows:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice-
>
> (1)   to defraud a financial institution; or
>
> (2)   to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. The Sixth Circuit has defined the elements of bank fraud as follows:

> (1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the defendant did so with the intent to defraud; and (3) that the financial institution was insured by the FDIC.

*United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006) (citations omitted).

B.     **The Superseding Indictment Plainly Alleges A Scheme and Intent to Defraud**

In his motion, Defendant states that "the allegations set forth in the indictment fail to articulate any [fraudulent] 'scheme' or 'artifice' perpetrated by [Defendant] to defraud MCB." Defendant also asserts that the "indictment is absolutely void of any facts to establish the mandatory element of intent to defraud." The Court, however, concludes that the superseding indictment describes, in detail, Defendant's role in making false and fraudulent representations to officials of MCB and to individuals who purchased property from Defendant.

The Court first notes that the superseding indictment states in its first paragraph that "the defendant, MITCHELL E. KARAM, did knowingly execute a scheme to defraud a financial

4

institution, that is, the Macomb Community Bank." Superseding Indictment ¶ 1. Thus, the indictment tracks the language of the bank fraud statute,[1] which, in itself, has been held to be sufficient to survive a motion to dismiss the indictment. *See Collis, supra.*

More substantively, and more importantly, the superseding indictment describes how Defendant was the Vice President and general contractor of Crystal Creek North, as well as the business partner of the owner of Crystal Creek North. Crystal Creek North's business was developing residential real estate lots at a specific location in Macomb County. MCB loaned $6 million to Crystal Creek North, an amount secured by a mortgage on real estate lots to be sold and developed by Crystal Creek North. As set forth in the superseding indictment, the terms of the mortgage required Crystal Creek North to pay MCB a discharge payment of $113,000 after each residential lot was sold by Crystal Creek North,[2] and after the discharge payment was made, the bank would release its mortgage interest on the lot. *See* Superseding Indictment, ¶7.

The superseding indictment alleges that Defendant sold thirty-six of the lots subject to MCB's mortgage but that Defendant did not pay MCB the required lot discharge payments of $113,000 for each such sale. Instead, the superseding indictment alleges that Defendant: (1) retained all of the money paid for the lots and used it for other purposes, and (2) presented each buyer with

---

[1]The language pertaining to the mail and wire fraud charges, as set forth in the superseding indictment, likewise tracks the language of the mail and wire fraud statutes. In addition, the superseding indictment alleges that MCB was a federally insured financial institution.

[2]Defendant asserts that the discharge payments were to be "repaid after the sale of 54 lots or 76% of the 71 total lots." The Government argues that Defendant is mistaken about the terms of the mortgage agreement, as it believes that the mortgage agreement required that each discharge payment be made after each lot sale. For purposes of deciding the Motion, however, this issue is irrelevant because it is a factual issue is to be decided at trial by the jury.

5

a fraudulent warranty deed for their property, which warranty deeds were signed by Defendant as Vice President of Crystal Creek North. Each of the warranty deeds purported to give the buyer an unencumbered ownership interest in the real estate, but the lots were still subject to the mortgage owned by MCB. *See* Superseding Indictment, ¶8. For these reasons, the Court finds that the superseding indictment alleges that Defendant fraudulently gave warranty deeds to the individual purchasers, each of which was signed by him and falsely purported to give the purchasers unencumbered ownership of the lots.

Next, the Government alleges that Defendant concealed the existence of the lot sales from officials at MCB. *See* Superseding Indictment, ¶ 10. The Government argues that if MCB officials had learned that Defendant had been selling lots (without making the required $113,000 discharge payments to MCB), then MCB could have foreclosed on the mortgage and stopped Defendant's scheme. Thus, it is alleged that, by making false statements to MCB and concealing material information, Defendant defrauded MCB. At paragraphs 12 through 14 of the superseding indictment, the Government describes Defendant's fraudulent scheme in detail:

> 12. In early 2007, an official at Macomb Community Bank met with [Defendant] on several occasions concerning the problems with Crystal Creek North's monthly interest payments and the belief by Macomb Community Bank officials that only a limited number of lots had been sold by [Defendant] and Crystal Creek North. During these meetings between [Defendant] and the Macomb Community Bank official, [Defendant] told the official that only twenty-three lots had been sold by Crystal Creek North. [Defendant] also told the official that the slowing economy explained why Crystal Creek North had not sold many lots. In making these statements, [Defendant] was seeking to forestall Macomb Community Bank and to delay the bank from foreclosing on the mortgage given the late and lesser interest payments. [Defendant] also was concealing the fact that he had not made the required $113,000 discharge payments to Macomb Community Bank on an additional thirty-six lots that he had sold, amounting to a total of over $4 million that [Defendant] had not paid

over to the bank.

13.     During his dealings with Macomb Community Bank officials in connection with the $6 million Crystal Creek North loan from 2003 through 2007, [Defendant] falsely led the officials to believe that only twenty-three lots had been sold by Crystal Creek North up through December 2007.

14.     [Defendant]'s statements to the Macomb Community Bank officials–during the meetings described in paragraph 12 and during [Defendant]'s other dealings with the officials described in paragraph 13–were false. In truth and in fact, [Defendant] had sold an additional thirty-six Crystal Creek North lots, provided false and fraudulent deeds to the purchasers of the lots that concealed the existence of Macomb Community Bank's mortgage interest, fraudulently represented to the purchasers that they were buying the Crystal Creek North lots free of any mortgages, had retained the $113,000 discharge payments on the lots that had been sold for his own use instead of giving Macomb Community Bank the payments owed, and had made false representations to Macomb Community Bank officials regarding the number of lots that had been sold.

The Court finds that these paragraphs of the superseding indictment set forth the heart of Defendant's scheme to defraud MCB. Likewise, they describe the fraud Defendant engaged in *vis a vis* the individual purchasers, which fraud served as the basis for the mail and wire fraud charges as Defendant allegedly communicated with such purchasers via mail and wire.

The Court rejects Defendant's contention that the superseding indictment should be dismissed because he had no contract or privity with MCB (Defendant states that he did not sign the mortgage and was not an owner of Crystal Creek North), there is no way he could have executed a scheme to defraud. First, privity of contract is not an element of bank, mail, or wire fraud. Defendant has not, and cannot, cite any authority that privity of contract is a necessary element of proving a fraud charge. Second, as the superseding indictment clearly alleges that Defendant was engaged in fraud, there is no need to allege or prove privity of contract or ownership of Crystal

Creek North. The Government need only allege and prove a scheme to defraud. Third, for purpose of charging Defendant with bank fraud, it is irrelevant whether Defendant signed the mortgage agreement with MCB or was in privity of contract with either MCB or Crystal Creek North. Rather, it is sufficient that the superseding indictment alleges that: (1) Defendant concealed material facts and made false representations to MCB for the purpose of defrauding MCB, and (2) Defendant fraudulently signed false warranty deeds for the purpose of defrauding the individual victims into giving him money for encumbered property. For these reasons, the Court concludes that the superseding indictment alleges both a scheme and intent to defraud by Defendant.

The Court also finds that the following arguments by Defendant lack merit: (a) the superseding indictment is defective because his relatives tried to pay back MCB, (b) as a result of civil litigation, individual fraud victims (or their title insurers) were able to keep their property when additional monies were paid to MCB from a variety of sources (only one of which was Defendant and/or his family), and (c) Defendant would have paid back MCB if the economy had not soured. It is well settled in the Sixth Circuit that actual repayment of embezzled or fraudulently acquired funds after discovery of the fraud is not a defense to the charges against Defendant, nor is the intent to later repay the victim. *See, e.g., United States v. Daniel*, 329 F.3d 480, 488 (6th Cir. 2003) (belief that fraud victim would eventually be repaid is not a defense); *United States v. Whitman*, 134 F.3d 373, 1997 WL 809978, at *5 (6th Cir. 1997) ("repayment evidence" was "of little, if any, relevance" in bank fraud case). *See also United States v. Rossomondo*, 144 F.3d 197, 201 (2d Cir. 1998) (it is "irrelevant whether such a defendant does in fact pay back the loan, or more generally, whether the victim of a fraudulent scheme does in fact suffer harm"); *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) ("the government is not required to prove that an intended victim was actually defrauded"

8

and "[n]o actual pecuniary injury, therefore, need result to the victim of the fraud"). Thus, the Court rejects Defendant's contention that the superseding indictment also must be dismissed based on any claim that Defendant's victims were repaid.

C.  **Conclusion**

For the reasons set forth above, the Court finds that: (1) the charges against Defendant set forth in the superseding indictment track the language of the applicable statutes, (2) the charges set forth in the superseding indictment contain the necessary elements of the offenses charged, (3) the superseding indictment fairly informs Defendant of the charges against which he must defend, and (4) the superseding indictment enables Defendant to defend the case and bar future prosecutions for the same conduct. Accordingly, the Court concludes: (a) the superseding indictment properly states the offenses of bank, mail, and wire fraud, and (b) Defendant's Motion must be denied.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, the Court DENIES Defendant's Motion to Dismiss Indictment (Docket #14).

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 2, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 2, 2011.

S/Marie E. Verlinde
Case Manager
(810) 984-3290

9